Filed 11/21/22  P. v. Bates CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br>v.<br>FRED ANDRE BATES,<br><br>      Defendant and Appellant. | A163788<br><br>(Alameda County<br>Super. Ct. No. 19CR016277) |

A jury convicted defendant and appellant Fred Andre Bates (Appellant) of attempted murder, assault with a firearm, and other charges.  The trial court sentenced Appellant to seven years plus 25 years to life in state prison.  On appeal, Appellant contends he received ineffective assistance of counsel (IAC), but the record is inadequate for this court to resolve his claims,[1] with the exception of his claim based on trial counsel's failure to request that the trial court exercise its discretion to strike or reduce the 25-year Penal Code[2]

---

[1] Appellant also asserts his IAC claims in a separate petition for writ of habeas corpus, case No. A165506.  We have denied that petition by separate order filed this date.

[2] All undesignated statutory references are to the Penal Code.

1

section 12022.53, subdivision (d) firearm enhancement. On that claim, we remand for resentencing.

## PROCEDURAL BACKGROUND

In April 2021, the Alameda County District Attorney filed an information charging Appellant with attempted murder (§§ 187, subd. (a), 664; count one); assault with a firearm (§ 245, subd. (a)(2); count two); aggravated mayhem (§ 205; count three); shooting at an occupied motor vehicle (§ 246; count four); possession of a firearm by a person with a prior conviction (§ 29900; count five); possession of ammunition by a person prohibited from doing so (§ 30305, subd. (a)(1); count six); and carrying a loaded firearm on one's person in a city (§ 25850, subd. (a); count seven). The information also included firearm and great bodily injury enhancement allegations, and alleged prior strike and serious felony convictions.

In July 2021, a jury found Appellant guilty on all counts and found true several of the firearm allegations. The prior conviction allegations were dismissed on the People's motion.

In September 2021, Appellant moved for a new trial, and the motion was denied. In October, the trial court sentenced Appellant to seven years in state prison plus an indeterminate term of 25 years to life. The sentence was based on the count one attempted murder charge and a section 12022.53, subdivision (d) firearm enhancement on that charge. The sentences on the remaining counts and enhancements were imposed and stayed.

The present appeal followed.

## FACTUAL BACKGROUND

Prosecution Case

Oakland Police Officer Christopher Buckhout was at Oakland's Eastmont Substation at 3:29 a.m. on October 13, 2019, when a person

2

suffering from gunshot wounds appeared at the front door. The victim, Kimberly S., was leaning against a car with wounds to her right eye and left arm. Emergency personnel took Kimberly S. to a hospital.

In video footage from Officer Buckhout's body camera, Kimberly S. said she was shot in the area of the homeless encampment on International Blvd. near the Smart and Final store. She said she was shot before getting into her car, "[a]nd the person followed me . . . and shot me again." When asked if she knew who shot her, she asked for help and for the police to call her husband, and then subsequently said "I can tell you everything," she was "pretty sure" she knew who shot her, "I can get all the information," and "I just can't explain it right now . . . I just need help." Later she added, "It's a drug thing."

In a second video from Officer Buckhout's body camera, Kimberly S. said she was shot on a one-way portion of a street near the Smart and Final. In a third video, Kimberly S. said the shooter was driving a tan and brown Ford F-150. In a fourth video, Kimberly S. said the owner of the truck was named "Dre," but she did not know his last name. She also said he was the only one in the truck. In a fifth video she said Dre lived on the naval base in Alameda in an apartment that she helped him get. All the videos were filmed at the hospital.

Kimberly S. testified she was homeless in 2016 and 2017 and knew many homeless people who lived in the area of International Blvd. and 42nd Avenue. In 2018 she obtained housing through the Bay Area Community Services (BACS) program. Afterwards, she returned to the homeless encampment to bring food to people, to help people find housing, and to purchase crack cocaine. Previously, in 2002 or 2003, she was arrested for shoplifting to support her drug habit.

Kimberly S. knows Appellant as "Dre." In 2018 and 2019 she regularly purchased drugs from him. During that period of time, Appellant was living in a tent or in motels with his girlfriend and his two-year-old daughter. Kimberly S. wanted to help him, so she set up an appointment for him at BACS. Appellant got housing in Alameda and also got a Ford F-150 truck from the program.

Kimberly S. acknowledged having periodic confrontations with Appellant. She wanted Appellant to refer people who needed housing to her for a business she was developing. She believed Appellant had not lived up to his agreement to promote her. She also believed Appellant was "ruining [her] reputation" because he was not using the truck to do landscaping, as he said he was going to do. She threatened to report Appellant to BACS, which could have resulted in him losing his housing. Kimberly S. said it is not normal for someone in the homeless community to disrespect their drug dealer the way she disrespected Appellant.

At around 3:15 a.m. on October 13, 2019, Kimberly S. was at the homeless encampment near the corner of 42nd Avenue and International Blvd. She had purchased drugs and was looking for a man named "Doc" to give him some food. Earlier in the evening she had consumed vodka. Appellant pulled up in his truck; Doc was with him. She approached the truck; Doc got out and walked away. Kimberly S. was in a hurry because she needed to get home, but she asked Appellant to meet her in the evening to talk through their issues. Appellant agreed and she walked to her car, which was about 16 feet away.

Kimberly S. heard a sound like a firecracker and got into her car. As she drove away, she felt a burning sensation and realized she was bleeding and had been shot. At the intersection of 42nd Avenue and International

4

Blvd. she looked in her rearview mirror and saw Appellant pulling up behind her. She turned right onto International Blvd. Appellant followed and pulled up on the left side of her car. Kimberly S. turned her head to the left, heard a loud noise, and was shot in the right eye. She did not see anyone else in Appellant's car, and she did not see other traffic or pedestrians.

Kimberly S. drove to a police station and was taken to a hospital, where she remained for ten days. She described the injuries caused by the two bullets, as did the doctor who treated her. The doctor also testified Kimberly S.'s blood-alcohol level at the hospital was 0.139 percent.

The prosecution called an expert to testify regarding Oakland's "ShotSpotter" system. ShotSpotter is "an acoustic gunshot detection and location system" that uses microphones to detect the sound of gunfire and determine its location. The locations given by the system are accurate to within 25 meters (82 feet). The system recorded a shot at 4201 International Blvd. at 3:17 a.m. on October 13, 2019. A second shot was recorded four minutes later at 5625 International Blvd.[3] From noon on October 12 to noon on October 13, the system captured 28 gunshots in Oakland.

Defense Case

Appellant's caseworker at BACS testified that Kimberly S. referred Appellant to BACS but did not play any other role in Appellant receiving benefits.

An Oakland police officer testified he did not find a shell casing or any blood in the area of 42nd Avenue and International Blvd. on the morning of the shooting.

---

[3] On its own motion, this court takes judicial notice of the facts that 4201 International Blvd. is near the corner of 42nd Avenue, and 5625 International Blvd. is between 56th and 57th Avenues. (Evid. Code, § 452, subd. (h).)

Defense witness Rachel B. testified she saw Appellant on the morning of the shooting at about 3:00 a.m. He was in his parked truck about three blocks away from 42nd Avenue and International Blvd. There was a male passenger in the truck. Rachel B. spoke to Appellant for five to ten minutes and then went to her tent in a homeless encampment. She returned about five minutes later and saw Kimberly S. talking to Appellant. The conversation was not friendly, and Kimberly S. appeared to be drunk. Rachel B. interrupted Kimberly S.'s conversation with Appellant and the two women argued. After less than five minutes, Kimberly S. left and walked in the direction of her car. Rachel B. spoke with Appellant for ten more minutes and then Appellant drove away. Rachel B. said that Kimberly S. is often drunk and that Kimberly S. is abrasive and starts arguments with people. Rachel B. has been friends with Appellant for several years; Appellant grew up with Rachel B.'s boyfriend.

Eddie C., also known as "Doc," knows both Appellant and Kimberly S. Between 2:00 to 3:00 a.m. on October 13, 2019, he arrived at the area of 42nd Avenue and International Blvd. in Appellant's truck. Kimberly S. approached the truck; she was "hooping and hollering," which was typical because she is very aggressive. She had a bottle in her hands and appeared to be intoxicated. Kimberly S. has a "history of harassing" Appellant. Appellant appeared to be insulted by the things she said, and Eddie C. suggested that Appellant go home. Eddie C. got out of the truck and Appellant drove off, turning right onto International Blvd. Sometime later, Eddie C. heard a gunshot near the Smart and Final store, but he did not focus on it because gunfire is common in the area. He testified he has known Appellant for over ten years and was "close" to Appellant's wife.

6

Appellant presents several IAC claims.  We conclude the record is inadequate to permit consideration of two of his claims.  The third claim has merit, and we remand for resentencing.

" ' "[I]n order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was 'deficient' because [counsel's] 'representation fell below an objective standard of reasonableness . . . under prevailing professional norms.' [Citation.]  Second, [the defendant] must also show prejudice flowing from counsel's performance or lack thereof.  [Citation.]  Prejudice is shown when there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." ' " (*People v. Weaver* (2001) 26 Cal.4th 876, 925.)

First, Appellant contends trial counsel was ineffective because he failed to present body camera footage from an Officer Iniguez.[4]  In arguing the motion for a new trial below, trial counsel told the court that he had reviewed his file following trial and located a video of the officer speaking to Kimberly S. that he had previously overlooked.  Counsel stated, "I felt that I needed to at least state for the record that had I been aware of that, I would have wanted to include that in the trial.  I think that the statements are significant.  'Who shot you?'  'I do not know the name,' I think is pretty significant.  So I'll just submit to the Court and trust that the Court will know what to do with that."  The prosecutor said he was "familiar with the

_____

[4] The officer's first name is not in the record.  Appellant spells the officer's last name "Iniquez," but we use the spelling in the reporter's transcript and video transcripts.

portion of [video] that [counsel] referenced." The prosecutor continued, "I would just note that throughout the investigation [Kimberly S.] made it clear that she did not know the defendant as Fred Bates. She knew him by the nickname 'Dre.' I don't think her statement there is inconsistent." The trial court denied the motion for a new trial.

On appeal, Appellant contends trial counsel was ineffective in failing to present the video from Officer Iniguez's body camera to the jury. However, neither the video nor a transcript of the video are part of the appellate record. "The scope of an appeal is, of course, limited to the record of the proceedings below. [Citations.] An appellant who claims to have been denied constitutionally adequate assistance of counsel and relies on evidence outside the record may seek relief on this basis through a collateral attack on the judgment by petition for writ of habeas corpus." (*People v. Williams* (1988) 44 Cal.3d 883, 917, fn. 12; see also *People v. Kelly* (2006) 40 Cal.4th 106, 126.) Appellant argues, "[t]he fact that the prosecutor agreed with defense counsel about the contents of the video . . . is sufficient to establish the record."[5] We disagree. The circumstance that the prosecutor said he was familiar with the portion of the video in question does not mean we may resolve Appellant's IAC claim on direct appeal without viewing the video. Among other things, it is not possible for this court to conclude Appellant was prejudiced without

---

[5] The two cases cited by Appellant to support this assertion do not support the point. In *People v. McWhorter* (2009) 47 Cal.4th 318, at page 370, the court merely recited that the prosecutor below accepted the defense counsel's factual representations for the purpose of arguing a motion to exclude evidence. In *In re S.C.* (2006) 138 Cal.App.4th 396, at page 426, the issue was whether, in a dependency proceeding, representations of the minor's counsel, to which there was no objection, were sufficient to support the juvenile court's decision to allow the minor to testify outside of her stepfather's immediate presence. Neither decision suggests a defendant may assert an IAC claim on appeal based on the type of record in the present case.

reviewing the video and whatever information it provides about Kimberly S.'s demeanor at the time the statement was made.

Next, Appellant contends he received ineffective assistance because trial counsel failed to request a continuance after defense witness Kimberly L. had to be taken to the hospital before she was able to testify. In support of Appellant's motion for a new trial, trial counsel filed a declaration stating, "I spoke with [Kimberly L.] two or three times about what her testimony would be. I have been unable to speak with her in the last month, so I cannot offer her declaration. But while it is my representations, I can offer what she said she would testify to." Counsel averred she would have testified that on the morning of the shooting her truck was parked near where Kimberly S. said she parked, and that Kimberly L. did not see Kimberly S.'s car there that morning. Counsel further averred that Kimberly L. said she did not see Kimberly S. that morning and that Kimberly L. said there was no shooting at the homeless encampment that morning.

The record contains no declaration from Kimberly L., and Appellant presents no authority a trial counsel's declaration about what a witness would have testified to is sufficient to support an IAC claim on direct appeal. Although the prosecutor accepted defense counsel's offer of proof for the purposes of arguing the motion for new trial, that does not mean we are required to accept that offer of proof for purposes of Appellant's IAC claim on direct appeal. In particular, without a sworn declaration stating precisely what Kimberly L. would have testified, this court is unable to conclude Appellant was prejudiced by defense counsel's failure to seek a continuance. As with Appellant's first IAC claim, the record is inadequate for this court to review the IAC claim.

Finally, the parties agree trial counsel was ineffective because he failed to request that the trial court exercise its discretion to strike the 25-year section 12022.53, subdivision (d) enhancement, or replace it with a 10-year enhancement under subdivision (b) or a 20-year enhancement under subdivision (c). The relevant history is that, in 2017, the Legislature enacted Senate Bill No. 620 (2017-2018 Reg. Sess.), amending section 12022.53, subdivision (h) to allow a court to exercise its discretion to strike a 12022.53 enhancement. (Stats. 2017, ch. 682, § 2.) In 2019, this court held in *People v. Morrison* (2019) 34 Cal.App.5th 217 (*Morrison*), that a trial court may strike a section 12022.53, subdivision (d) enhancement and replace it with a lesser enhancement under subdivision (b) or (c). In *People v. Tirado* (2022) 12 Cal.5th 688, the California Supreme Court resolved a split of authority and held that *Morrison* "correctly described the scope of a trial court's sentencing discretion under section 12022.53." (*Tirado,* at p. 697.)

Appellant was sentenced on October 4, 2021. The parties agree trial counsel provided deficient representation in failing to request that the trial court exercise its discretion under section 12022.53, subdivision (h), as interpreted in *Morrison*, *supra*, 34 Cal.App.5th 217. The parties also agree Appellant was prejudiced because it is reasonably probable the trial court would have elected to impose one of the lesser enhancements. Notably, the trial court expressed discomfort at the length of the sentence and commented "[m]y hands are pretty much tied."

We agree trial counsel provided ineffective assistance and we remand for resentencing. The parties agree that, at the time of resentencing, Senate Bill No. 81 (2021-2022 Reg. Sess.) will apply; that enactment amended section 1385 to include specific factors that the trial court must consider when deciding whether to strike enhancements from a defendant's sentence

in the furtherance of justice.  (Stats. 2021, ch. 721, § 1.)  We agree that Senate Bill No. 81 (2021-2022 Reg. Sess.) will apply at resentencing.  (*People v. Sek* (2022) 74 Cal.App.5th 657, 674.)[6]

DISPOSITION

The judgment is reversed and the matter is remanded for resentencing.

---

[6] Appellant also asserts the trial court erroneously imposed great bodily injury (§ 12022.7, subd. (a)) enhancements on counts one through three in its oral pronouncement of the sentence.  Respondent points out that the minute order and abstract of judgment properly reflect *no* imposition of those enhancements.  As the parties are in agreement regarding the lack of jury findings regarding those enhancements, there is no reason to think any section 12022.7, subdivision (a) enhancements will be imposed at the time of resentencing.

_____

                                    SIMONS, J.

We concur.

_____

JACKSON, P. J.

_____

WISEMAN, J.*

(A163788)

_____

        * Retired Associate Justice of the Court of Appeal, Fifth Appellate
District, assigned by the Chief Justice pursuant to article VI, section 6 of the
California Constitution.